### NICHOLAS v. UNITED STATES.

#### (Circuit Court, S. D. New York. May 24, 1900.)

#### No. 2,854.

**1. CUSTOMS DUTIES—RECIPROCAL COMMERCIAL AGREEMENTS.**

The reciprocal commercial agreement entered into between the United States and France (Proc. May 30, 1898, 30 Stat. 1774), under section 3, tariff act of July 24, 1897, 30 Stat. 203, c. 11 [U. S. Comp. St. 1901, p. 1690], and providing for a reduction in the duty on "brandies, or other spirits," was the result of negotiations and representations had with reference, among other things, to liqueurs and cordials, and the French copy of said agreement contains the word "liqueurs." *Held*, that merchandise known as "liqueurs" is included in the agreement.

**2. SAME—CLASSIFICATION—LIQUEURS—CHARTREUSE.**

The cordial known as "Chartreuse," imported from France, is a liqueur, and is included in the provision for a reduced rate of duty on "brandies, or other spirits," in the reciprocal commercial agreement between the United States and France (Proc. May 30, 1898, 30 Stat. 1774).

Appeal by the Importer from a Decision of the Board of United States General Appraisers (G. A. 4,311) which Affirmed a Decision of the Collector of Customs at the Port of New York.

Jacob Fromme and Frederick W. Brooks, for the importer.
D. Frank Lloyd, Asst. U. S. Atty.

TOWNSEND, District Judge. Section 3 of the act of July 24, 1897, 30 Stat. 203, c. 11 [U. S. Comp. St. 1901, p. 1690], provides "that for the purpose of equalizing the trade of the United States with foreign countries, and their colonies, producing and exporting to this country" certain articles therein named, the President is authorized to enter into negotiations with the governments of such countries, with a view to the arrangement of commercial agreements in which reciprocal and equivalent concessions may be secured in

favor of the manufactures and products of the United States, and authorizes the President to enter into such commercial agreements as in his judgment should be reciprocal and equivalent, and to suspend by proclamation the imposition and collection of the duties provided for in the act, and to substitute therefor duties as specifically stated in said section. In pursuance of these provisions, the President entered into a reciprocity treaty between the United States and France in May, 1898 (Proc. May 30, 1898, 30 Stat. 1774).

On the 10th of June, 1898, the protestant imported a quantity of liqueur or cordial known under the name of "Chartreuse." Duty was assessed thereon at the rate of $2.25 per gallon, under the provisions of paragraph 292 of said act, 30 Stat. 173 [U. S. Comp. St. 1901, p. 1654], as a cordial or liqueur. The importer protested, claiming that the Chartreuse was dutiable under said reciprocity treaty at only $1.75 per proof gallon. The board overruled the protest, and affirmed the decision of the collector.

It appears from the evidence that Chartreuse is a liqueur composed of distilled spirits and extracts from certain plants subjected to an elaborate process of manufacture at the Grand Chartreuse of the Carthusian Monks, in France. The only ground on which the counsel for the United States attempts to sustain the imposition of the higher duty under paragraph 292 is that this article is not comprised within "brandies, or other spirits manufactured or distilled from grain or other materials, one dollar and seventy-five cents per proof gallon," as provided for in said third section of the act. There might be considerable force in this contention, if the language of the original agreement justified such conclusion. It appears, however, that in the negotiations between the Honorable John A. Kasson, special commissioner and plenipotentiary of the United States, and his excellency, M. Jules Cambon, ambassador of France, the records of the bureau of statistics in the Treasury Department were invoked for the purpose of showing the importations from France to this country of brandy and other spirits, and that there were included therein the various kinds of liqueurs and cordials. It appears, further, that the reciprocal commercial agreement between the United States and France, in the French language, as submitted to the representative of the French government and signed both by him and by Mr. Kasson, contained the language: "Cognacs, ou autres spiritueux, ou liqueurs fabriquées, provenant de la distillation de grains ou d'autres matières, un dollar et soixante quinze cents par gallon." It is a well-known fact, and it further appears from the testimony, that cordials such as Chartreuse are known both in France and in this country as liqueurs; and it further appears that they have been "fabriquées" or manufactured, and that they result from a process of distillation. While the language of the agreement as printed in English does not contain the word "liqueurs," yet, inasmuch as the agreement presented by this government to the French government, and the representations connected therewith by means of which the agreement may be supposed to have been concluded, did expressly include such liqueurs therein, this construction must be adopted and enforced. The foreign manufacturer, having presumably acted on the faith of this

agreement, should not now be deprived of the benefit thereof because of a possible difference of understanding as to its terms in this country.

The decision of the board of general appraisers is reversed.